IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT WARDRICK                     *
          Plaintiff
     v.                                        *   CIVIL ACTION NO. AMD-05-241

LEHRMAN DOTSON, et al.,         *
          Defendants
                                           ***

MEMORANDUM

This 42 U.S.C. § 1983 civil rights action was filed by plaintiff while he was a federal detainee housed at the Maryland Correctional Adjustment Center ("MCAC") in Baltimore.[1] Plaintiff claimed that he got into an argument with another federal detainee, Fred Charlon, who threw an ice chest and spat at plaintiff. Wardrick complained that when he informed MCAC officials of Charlon's conduct, he was moved to a cell "upstairs" with Charlon and lost half his recreation time.

The thrust of the complaint for damages concerns Wardrick's housing situation as related to his medical conditions.[2] Plaintiff complained that due to his new "upstairs" housing situation, he was being forced to walk up and down stairs in spite of his diabetes, high blood pressure, gout, arthritis, and nerve damage to his lower extremities. He claimed that it took him 20 minutes to climb 16 steps and that the movement caused him excruciating

---

[1] Plaintiff was transferred to the U.S. Bureau of Prisons in July of 2005.

[2] In his original letter complaint plaintiff stated that he was housed on the same tier as Charlon. The gravamen of his complaint and supplemental complaint, however, is denial of healthcare, not failure-to-protect.

pain. Plaintiff complained that defendants Lane, Johnson, and Wainwright refused to help him or move him back to a lower tier after being made aware of his medical conditions.

Now pending before is defendant Lane's motion to dismiss or, in the alternative, summary judgment and defendants Dotson, Wainwright, and Johnson's ("state defendants") motion to dismiss or, in the alternative, motion for summary judgment.[3] Paper Nos. 21 & 23. Plaintiff has filed an opposition. Paper No. 25. No hearing is needed to resolve the constitutional health care issues presented in the complaint. *See* Local Rule 105.6. (D. Md. 2004). For the reasons stated below, the court shall grant defendants' motions.

A.

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there

---

[3]The dispositive pleadings have been construed as motions for summary judgment.

is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See  Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element...necessarily renders all other   facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file."  Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting

3

*Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

B.

In order to state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that defendants' acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id*. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level.

*See Russell v. Shaeffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

## C.

According to the record presented to this court, plaintiff is a 51 year old male, 5' 10" tall, weighing about 205 pounds, who suffers from insulin dependent diabetes, hypertension, and well-controlled gout. There is no dispute that plaintiff was moved to an upper tier cell while at MCAC. Defendant Lane claims that such a housing assignment is controlled by Division of Correction authorities. She affirms that MCAC security staff did contact her regarding plaintiff's move to an upper top tier, and she did not feel it medically necessary to move him, but expressed the opinion that climbing stairs would be medically beneficial for plaintiff's circulation problems caused by his insulin dependent diabetes. Dr. Lane claims that plaintiff never asked her to write a prescription for a lower tier. She asserts that plaintiff was seen in the medical department on January 23 and January 24, 2005, for a complaint of chest pain. The record shows that plaintiff initially received treatment with Nitrostat and Tylenol, and his respiratory and EKG test results were normal. In addition, plaintiff was seen on February 1, 2005, and although he reported no pain, his Vasotec prescription was increased due to his blood pressure level. Plaintiff was further evaluated by MCAC medical staff: on February 8, 2005, for complaints of a cold, constipation, and pain from walking the stairs; on March 4, 2005, for a complaint of chest (epigastric) pain; and on March 8, 2005, for follow-up examination in the Chronic Care Clinic, where he

reported a rash on his arms and pain in his right knee. Plaintiff's diabetes medication was modified, a 2,400 calories diabetic diet was ordered, but no additional pain medication was ordered since plaintiff was already on Naproxen for his gout.[4]

The state defendants maintain that plaintiff was confined at MCAC from June 3, 2004, to July 5, 2005. They maintain that he was housed with the rest of the federal detainee population who were assigned to C-Pod, and he was placed in cell 5 on the top tier from June 3 to August 5, 2004. On August 5, 2004, plaintiff was moved to C-Pod, Quad-3, where detainees that must be kept separate from the rest of the federal population are housed.[5] The state defendants assert that plaintiff was initially assigned to a bottom tier until January 19, 2005, when it became necessary to move him to a top tier cell because he was not getting along with another detainee that was also housed on the bottom tier. According to the state defendants, plaintiff was moved back to the bottom tier on February 8, 2005, and was transferred out of the institution on July 5, 2005.

In his opposition, plaintiff complains that Dr. Lane did not care about him and she sided with Division of Correction officials. He asserts that he received inadequate, insufficient, reckless medical care and seemingly claims that his neuropathy and gout arthritis were aggravated due to the decisions of prison and medical staff to place him on an upper tier.

---

[4] Naproxen is a non-steroidal anti-inflammatory drug, which is indicated for the treatment of acute gout. *See* Physician's Desk Reference ("PDR") at 2902-05 (58th ed. 2004).

[5] No explanation is provided for this particular assignment.

There is no dispute that federal detainees are housed at MCAC in C-Pod, separate from state prisoners who are otherwise housed at MCAC for disciplinary and administrative reasons. Plaintiff was moved to an upper tier in C-Pod on January 19, 2005, and remained housed on that tier until February 8, 2005, when he was moved to the bottom tier. Defendants' filings indicate that he was moved to the upper tier because of a conflict with another federal detainee on the bottom tier and there was no medically indicated reason for plaintiff not to be housed on the top tier. Plaintiff suffers from hypertension, diabetes, and gout, which is well-controlled with Naproxen. It remains uncontroverted, however, that: there was no physician order for lower housing; plaintiff never asked Dr. Lane for such an order; and, in any event, Dr. Lane did not believe that plaintiff's medical conditions warranted the writing of an order for a lower tier cell.

Plaintiff received assessments and treatment from prison health care staff for his medical conditions. Although he remained housed on the top tier on C-Pod for approximately twenty days, there is no demonstration that the assignment occurred in contravention of a physician's order or that plaintiff experienced a serious injury from such an assignment. Plaintiff may disagree with Dr. Lane's assessment regard a medical housing assignment, but such a dispute does not comprise a constitutional claim. For these reasons, the court finds no Eighth Amendment deprivation in regard to plaintiff's medical needs.

D.

For the reasons set forth, judgment as a matter of law in favor of defendants is warranted. An Order follows.


Filed: September 28, 2005                              /s/
                                              Andre M. Davis
                                              United States District Judge